* LEP*05 JUN 27 14 30&30 0F*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RANDY AND CINDY MATHEWS,                    Civ. No. 04-6117-AA

     Plaintiffs,                    OPINION AND ORDER

  v.

FARMERS INSURANCE COMPANY OF
OREGON, a corporation,

     Defendant.

_____

Daniel M. Holland
Ronald B. Terzenbach
Loomis & Holland
801 East Park
Eugene, OR  97401
    Attorneys for plaintiffs

Joseph G. Schwarte
Arnold Gallagher Saydack Percell Roberts & Potter
800 Willamette Street, Suite 800
P.O. Box 1758
Eugene OR  97440-1758

Gerald J. Nielsen

1 - OPINION AND ORDER

Nielsen Law Firm
3838 N. Causeway Blvd., Suite 2850
Metairie, LA 70002
     Attorneys for defendant Farmers Insurance Co.

AIKEN, Judge:

Plaintiffs bring this action to recover benefits under a Standard Flood Insurance Policy (SFIP) issued by defendant Farmers Insurance Company (Farmers) as an insurance carrier participating in the "Write-Your-Own" program of the National Flood Insurance Program authorized under the National Flood Insurance Act, 42 U.S.C. § 4001, *et seq.* Plaintiffs argue that they are entitled to benefits of $250,000 under the SFIP, because the loss of their home was directly caused by a "flood" as defined under the policy. Farmers argues that plaintiffs' failure to submit a sworn "proof of loss" precludes recovery under the SFIP and that, regardless, plaintiffs' loss was not caused by a flood.

Both parties move for summary judgment, and Farmers also moves to strike portions of Daniel Holland's affidavit, portions of plaintiff Randy Mathews' affidavit, and plaintiffs' jury demand. On May 24, 2005, the court heard oral argument on the parties' motions. Farmers' motion for summary judgment is granted.

BACKGROUND

The National Flood Insurance Program (NFIP) was authorized under the National Flood Insurance Act "to provide affordable flood insurance on a national basis and to discourage the construction of new structures in flood prone areas." <u>Flick v. Liberty Mut. Fire</u>

Ins. Co., 205 F.3d 386, 388 (9th Cir. 2000); 42 U.S.C. §§ 4001(a).
The Federal Emergency Management Agency (FEMA) administers the NFIP
and developed the "Write Your Own" (WYO) program to assist it in
marketing flood insurance. Flick, 205 F.3d at 389; see also 42
U.S.C. §§ 4011(a), 4071, 4081(a); 44 C.F.R. §§ 62.23, 62.24; 48
Fed. Reg. 46789 (Oct. 14, 1983). Under the WYO program, private
insurers issue standard flood insurance policies directly and act
in a fiduciary capacity as a fiscal agent of the United States. 42
U.S.C. § 4071(a)(1); 44 C.F.R. § 62.23. Coverage is provided in
accordance with NFIP regulations and is identical in scope and cost
to policies issued by FEMA, with claims paid out of funds drawn
from the National Flood Insurance Fund. See 42 U.S.C. 4017(a);
Flick, 205 F.3d at 389, 392.

Plaintiffs own real property at 38239 McKenzie Highway,
Springfield, Oregon, in a zone designated as an "AE Special Flood
Hazard Area" - flood plain land subject to a one or greater
percentage chance of flooding in any year. In 1996, plaintiffs
began building a two-story single family home on a 6.94 acre parcel
of the property. The home was located 110 feet from the south bank
of the McKenzie River near a bend in the river.

Located near the housing site was a 50-year old rock revetment
(or dike) built by the Army Corps of Engineers to protect the
property from the river. After construction of the house began,
part of the rock revetment washed away, and plaintiffs undertook
repairs themselves. In 1999, plaintiffs began living in the home.

3 - OPINION AND ORDER

Plaintiffs purchased a Standard Flood Insurance Policy from Farmers to cover losses to their home resulting from a flood. Although Farmers issued the SFIP as a WYO carrier, the SFIP was written by FEMA and is codified by regulation. 44 C.F.R. Pt. 61, App. A(1). The SFIP provides $250,000 for building coverage and $60,000 for contents.

Beginning in 2001 or 2002, plaintiffs contacted various governmental agencies and representatives to discuss erosion of the south riverbank near their home. See Defendant's Memorandum in Support of Rule 56 Motion for Summary Judgment (Defendant's Memorandum), Ex. 6, pp. 2-4, 14, 16-19. For example, in late 2002 or early 2003 plaintiffs contacted the Army Corps of Engineers and complained that a water diversion project on the McKenzie River operated by the Natural Resource Conservation Service (NRCS) was causing erosion of the riverbank. Id. Ex. 6, p. 2. Randy Mathews also contacted Linda Cooke, Emergency Manager for Lane County, to discuss the erosion of the south riverbank and the NRCS project. Id. Ex. 6, pp. 3-4.

In February and April of 2003, NRCS sent two engineers to examine plaintiffs' property and determine whether the NRCS project was contributing to the erosion of the riverbank. In reports dated February 19, 2003 and April 14, 2003, the engineers concluded that severe erosion of the riverbank has already occurred with "massive bank/revetment failures as recently as the first week of February [2003]," and that the erosion would have occurred regardless of the

NRCS project, because the channel of the McKenzie River had changed course in 1996. Defendant's Memorandum, Ex. 6, pp. 16-19.

On December 13, 2003, plaintiffs allege that heavy rainfall caused a significant rise and increased streamflow of the McKenzie River. Specifically, plaintiffs contend that the river flow on December 13 was 23,726 cubic feet per second (cfs) as opposed to the average December streamflow of 5,178 cfs. Plaintiffs allege that the increased streamflow destroyed the rock revetment between the home and the riverbank and significantly eroded or caused the collapse or subsidence of the riverbank next to their home. By December 14, 2003, plaintiffs allege that the distance between their home and the McKenzie River had diminished to sixty or seventy feet.

Plaintiffs contacted various government agencies and officials seeking assistance to preserve their home, although plaintiffs do not identify the type of help requested. Plaintiffs also investigated the feasibility and cost of reconstructing the revetment or moving their home.

Plaintiffs claim that they had several discussions with Farmers' representatives regarding insurance coverage. Plaintiffs aver that Farmers represented to them that their homeowner's insurance policy would not cover any losses resulting from the erosion of the riverbank, and that insurance coverage, if any, would be provided under the SFIP.

On January 29, 2004, Lane County granted plaintiffs permission

to move their home without a written permit.  However, by that time only fourteen feet separated the house from the riverbank, and it was not possible to move the house safely.

On January 30, 2004, portions of the foundation and the septic tank of the home were swept away by the McKenzie River.  On the same day, Lane County condemned the home as unsafe.

On February 3, 2004, an independent claims representative inspected plaintiffs' property at Farmers' request.  At that time, a portion of the home was hanging over the riverbank with no land beneath it. Plaintiffs subsequently retained counsel, who engaged in discussions with Farmers' representatives regarding coverage under the SFIP for the loss of plaintiffs' home.

On February 23, 2004, plaintiffs received notices from the Oregon Department of Environmental Quality and the Eugene Water and Electric Board regarding non-compliance with Oregon Administrative Rules and potential liability that would arise if their home fell into the McKenzie River.

On March 3, 2004, Farmers notified plaintiffs that their claim under the SFIP was denied, because the loss of their home was not caused by a flood as defined in the policy.

On March 6, 2004, plaintiffs' home was demolished.

On March 12, 2004, plaintiffs' counsel wrote to Farmers' claims representative and enclosed documentation of plaintiffs' loss and requested payment of benefits under the SFIP.

On March 15, 2004, Farmers affirmed its previous denial of

SFIP coverage.

On April 21, 2004, plaintiffs filed this action to obtain benefits of $250,000 under the SFIP.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©). The materiality of a fact is determined by the substantive law on the issue. <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. <u>Id.</u> at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the

moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Electrical, 809 F.2d at 630.

## DISCUSSION

Farmers first argues that it is entitled to judgment as a matter of law, because plaintiffs failed to submit a sworn proof of loss within sixty days as required by the SFIP. Farmers also maintains that the loss of plaintiffs' home was not caused by a flood. Plaintiffs contend that they are entitled to judgment as a matter of law, because they are excused from complying with the proof of loss requirement and the undisputed facts establish that a flood caused the loss of their home.

A. Proof of Loss

The SFIP requires that a claimant provide a detailed, sworn proof of loss form within sixty days from the date of loss, i.e., the date on which physical changes to the property become evident. SFIP Art. II.B.12 and Art. VII.J.4 (Ex. 6 to Affidavit of Randy Mathews). The SFIP warns claimants that "you must still send us a proof of loss within 60 days after the loss even if the [insurance] adjuster does not furnish the form or help you complete it." SFIP Art. VII.J.7.

Plaintiffs maintain that no physical changes to their home were apparent until January 30, 2004, when part of the foundation and septic tank were swept away by the river. If accepted,

plaintiffs were required to file a sworn proof of loss on or before
March 30, 2004. It is undisputed that plaintiffs never filed a
sworn proof of loss or obtained a waiver from the Federal Insurance
Administrator. SFIP Art. VII(D); 44 C.F.R. §§ 61.13(d).

The parties agree that federal law governs the interpretation
of a SFIP issued pursuant to the NFIP. McHugh v. United Serv.
Auto. Ass'n, 164 F.3d 451, 454 (9th Cir. 1999) ("The law is clear
that, as contracts, [standard flood insurance policies] issued
under the National Flood Insurance Program . . . are governed by
federal law applying standard insurance law principles.").
Further, it has long been recognized under federal law that "an
insured must comply strictly with the terms and conditions of a
federal insurance policy." Flick, 205 F.3d at 390 (citing Federal
Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384-85 (1947)). In
Merrill, the Supreme Court held that a group of farmers could not
recover benefits for crop losses under a federal crop insurance
policy, because their claims did not comply with all terms and
conditions for coverage set forth in the applicable regulations.
Id. at 385. Emphasizing the general "duty of all courts to observe
the conditions defined by Congress for charging the public
treasury," the Court noted that "not even the temptations of a hard
case" may allow the recovery of insurance benefits contrary to
federal regulations. Id. at 385-86; Flick, 205 F.3d at 390.

In the context of flood insurance, therefore, "[t]he SFIP's
procedural requirements must be taken seriously: They constitute
9 - OPINION AND ORDER

conditions precedent to a waiver by the federal government of its sovereign immunity, conditions that define our jurisdiction." Wagner v. Fed. Emergency Mgmt. Agency, 847 F.2d 515, 518 (9th Cir. 1988). Consequently, WYO carriers may not alter, amend, or waive any provision or condition of the SFIP without express written consent from the Federal Insurance Administrator. SFIP Art. VII(D); 44 C.F.R. § 61.13(d); Suopys v. Omaha Prop. & Cas., 404 F.3d 805, 807 (3rd Cir. 2005). "Because flood losses, whether insured by FEMA or by a participating WYO insurer, are paid out of the National Flood Insurance Fund, a claimant under a standard flood insurance policy must comply strictly with the terms and conditions that Congress has established for payment." Flick, 205 F.3d at 394.

The Ninth Circuit has upheld this principle specifically with respect to the proof of loss requirement. See Flick, 205 F.3d at 391; Wagner, 847 F.2d at 518. In Wagner, the court held that FEMA was not estopped from denying claims for benefits under a SFIP for failure to file a timely proof of loss. Id. at 518-20. The court emphasized that the SFIP "candidly warns potential claimants" that the conditions of the SFIP must be "strictly observed" and that claimants cannot "rely on FEMA's assistance in complying with the proof of loss requirement" Id. at 518, 520; see also Suopys, 404 F.3d at 810 (the SFIP "places the onus on the insured to file the proof of loss within 60 days regardless of the representations and assistance, or lack thereof, provided by the insurer or its

10 - OPINION AND ORDER

adjuster."). Thus, "a claimant under a standard flood insurance policy may not avoid strict enforcement of the 60 day sworn proof of loss requirement, except through a valid waiver by the Federal Insurance Administrator." Flick, 205 F.3d at 391.

Notwithstanding this overwhelming precedent, plaintiffs argue that they are excused from filing a proof of loss, because Farmers denied coverage and therefore "repudiated" the SFIP before the time for filing the proof of loss had expired.    Plaintiffs rely on Studio Frames Ltd. v. Standard Fire Ins. Co., 369 F.3d 376 (4th Cir. 2004), where the plaintiff art gallery, Studio Frames, suffered flood damage in leased building space and to its contends. The WYO insurer determined that coverage for damage to the building "was invalid under the SFIP because Studio Frames did not own the building" and attempted to refund the premiums paid for building coverage.    Id. at 378.    Studio Frames subsequently filed a timely proof of loss for contents of the building (but not the leasehold improvements) and filed suit to challenge the insurer's disavowal of building coverage.    Id. at 378-79.    The district court granted summary judgment in favor of the WYO insurer, finding that Studio Frames' suit was barred because it never submitted a proof of loss for the leasehold improvements.    Id.

The Fourth Circuit reversed, finding that a question a fact existed as to whether Studio Frames was excused from filing a proof of loss by virtue of the insurer's termination of building coverage prior to the proof of loss deadline.    Id. at 382.    The court

explained:

> Whereas the *equitable* concepts of waiver and estoppel prevent a party from asserting a legal right that is otherwise valid and would be binding on the parties, the legal doctrine of repudiation . . . provides that, when one party repudiates its obligations under a contract, the unperformed contractual rights and duties of the contract cease to be binding on the non-repudiating party altogether . . . [and] the right of the non-repudiating party to recover on the contract without first performing conditions precedent "is given to the non-repudiating party *by the law*, irrespective of the repudiating party's wishes."

Id. at 381 (quoting *Williston on Contracts* § 39:38 (Richard A. Lord, ed., 4th ed. 2000) (citations omitted). Thus, "if Standard Fire's refusal to provide building coverage under the SFIP amounted to a repudiation of its policy for flood insurance, Studio Frames' failure to file a proof of loss was not dispositive of its claim." Id. at 382.

Plaintiffs maintain that Farmers repudiated the SFIP when it denied their claim for benefits on March 3rd, because Farmers took no further action to fulfill its obligations under the SFIP, Farmers was mistaken in denying benefits, and Farmers' denial of their claim was unequivocal. See Studio Frames, 369 F.3d at 383. Thus, because Farmers "repudiation" occurred prior to the sixty-day proof of loss deadline, plaintiffs maintain that the requirement ceased to be binding on them and they may recover under the SFIP despite their failure to file a sworn proof of loss.

I find this case distinguishable from Studio Frames in several important respects. In Studio Frames, the WYO insurer deemed coverage for the building *invalid* under the SFIP irrespective of

the cause of the claimed loss. Accordingly, the insurer gave
notice that it would not perform its obligations under the SFIP,
i.e., provide coverage for damage to leasehold improvements, under
any circumstances. Here, Farmers did not assert that coverage
under plaintiffs' SFIP was invalid or attempt to refund premiums
paid by plaintiffs. Farmers did not evince an intent to deny
coverage or benefits under the SFIP in the event plaintiffs
established losses directly or proximately caused by a flood.
Instead, Farmers denied plaintiffs' claim under the SFIP because it
determined that the loss of plaintiffs' home was not caused by a
"flood." Rather than repudiate the SFIP, Farmers denied benefits
in accordance with its interpretation of the SFIP and its belief
that plaintiffs' loss was caused by gradual erosion or earth
movements - events not covered under the SFIP.

The Supreme Court has ruled that the denial of a claim for
benefits under an insurance policy does not constitute a
repudiation. In New York Life Ins. Co. v. Viglas, 297 U.S. 672
(1936), the Supreme Court found no repudiation of an insurance
policy where the insurer refused to pay benefits for a continuing
disability. The Court reasoned that the insurance company "did not
disclaim the intention or the duty to shape its conduct in
accordance with the provisions of the contract. Far from
repudiating those provisions, it appealed to their authority and
endeavored to apply them." Id. at 676. The Court continued: "If
it made a mistake, there was a breach of a provision of the policy
with liability for any damages appropriate thereto." Id.; see also

<u>Great Am. Life Ins. Co. v. Yarbrough</u>, 360 F.2d 562, 568 (8th Cir. 1966); <u>Reassure Am. Life Ins. Co. v. Rogers</u>, 248 F. Supp. 2d 974, 988 (D. Haw. 2003).

Likewise, Farmers did not disclaim its rights or obligations under the SFIP; instead it endeavored to meet them by denying coverage for losses it did not believe to be covered. Thus, I do not find that Farmers' denial of plaintiffs' claims for benefits "amounts to" a repudiation of the SFIP, and plaintiffs were not excused from filing a sworn proof of loss.

B. Definition of "Flood"

Even if plaintiffs were excused from submitting a proof of loss, Farmers argues that plaintiffs are not entitled to benefits under the SFIP as a matter of law, because the loss of their home was not caused by a flood.

The SFIP is a single-risk insurance policy that provide coverage "for direct physical loss by or from flood to your insured property." SFIP Art. I.; 44 C.F.R. Pt. 61, App. A(1). Direct physical loss from a flood is defined as: "Loss or damage to insured property, directly caused by a flood. There must be evidence of physical changes to the property." <u>Id.</u> Art. II.A.12.

Farmers contends that plaintiffs are not entitled to summary judgment, because a question of fact exists as to whether the increased flow of the McKenzie River on December 13 and 14 directly or proximately caused the loss of plaintiffs' home. Farmers emphasizes that one or more years prior to December 13, 2003, plaintiffs contacted the Army Corps of Engineers and Lane County to

complain that a public works project was causing erosion of the riverbank next to their home. See Defendant's Memorandum, Ex. 6.

Similarly, plaintiffs' own expert, Karel Broda, issued a report on January 30, 2004, in which he states:

> Based on a conversation with Mr. Mathews, and on supplied documentation, the severe bank erosion along the Mathews property commenced in early 2003. This erosion is a result of ongoing changes in alluvial geomorphology at and near a meander located downstream from the eroding bank. An existing rock revetment, built in the 1950s by the Army Corps of Engineers, eroded at about the same time. Without the bank protection, the bank erosion has grown progressively worse . . . .

Defendant's Memorandum, Ex. 6, p. 9.

Finally, a report from Inter-fluve, Inc. dated January 15, 2004 informed plaintiffs that changes to the channel of the McKenzie River began "as early as 1996" and caused "the formation of the chute cutoff on your property." Id. Ex. 6, p. 12. The report continued, "At this point it would have been reasonably predictable that your streambank would be at risk in the future. Unfortunately, the nature of these processes is such that long periods of time may go by before the abrupt changes in river behavior and location occur, as happened in 2002." Id. The report confirmed that the NCRS project did not cause the erosion, as the "change in the channel location would have been sufficient to initiate erosion and scour leading to the eventual failure of the revetment protecting your property." Id.; see also Affidavit of Ralph Christensen (Defendant's Memorandum, Ex. 18).

I agree that this evidence raises questions of fact as to whether plaintiffs' loss was caused the gradual change in course of

the McKenzie River as opposed to the increased streamflow on December 13 and 14, and therefore, plaintiff's are not entitled to summary judgment.

Farmers argues that it is nonetheless entitled to summary judgment, because plaintiffs do not present evidence to support their argument that the events of December 13 and 14 constituted a "flood" as defined in the SFIP. Absence the occurrence of a flood, plaintiffs are not entitled to benefits. Plaintiffs counter that they present uncontested expert opinion concluding that a flood occurred on December 13 and 14. Thus, the court must look to the definition of flood under the SFIP.

Federal common law governs the interpretation of a SFIP, and courts must "interpret the SFIP in accordance with its plain, unambiguous meaning." Linder & Assoc., Inc. v. Aetna Cas. & Sur. Co., 166 F.3d 547, 550 (3d Cir. 1999); Flick, 205 F.3d at 390. "Although exclusions and ambiguities in the policy are strictly construed against the insurer, we must give effect to the '[c]lear policy language,' and refrain from 'tortur[ing] the language to create ambiguities.'" Linder & Associates, Inc., 166 F.3d at 550 (quoting Selko v. Home Ins. Co., 139 F.3d 146, 152 n.3 (3d Cir. 1998)).

The SFIP defines a "flood" as:

1. A general and temporary condition of partial or complete inundation of normally dry land areas or of two or more properties (one of which is your property) from:

    a.  Overflow of inland or tidal waters,

    b.  Unusual and rapid accumulation or runoff

of surface waters from any source,

c.  Mudflow.

2.  Collapse or subsidence of land along the shore of a lake or similar body of water as a result of erosion or undermining caused by waves or currents of water exceeding anticipated cyclical levels that result in a flood as defined in A.1.a. above.

SFIP Art. II.A.; see also 44 C.F.R. Pt. 61, App. A(1).

Plaintiffs argue that the events of December 13 and 14 meet the definition of flood, because the subsidence, collapse or loss riverbank next to their home was caused by McKenzie River currents exceeding normal cyclical levels.  However, the currents of water exceeding cyclical levels must also "result in a flood as defined in A.1.a."  Therefore, plaintiffs must nevertheless establish that an overflow of inland water from the McKenzie River caused a general and temporary inundation of their property.

"Temporary" requires no edification.  "Inundation" is not defined in the regulations, but it commonly means "a rising and spreading of water over land not usu[ally] submerged." *Webster's Third New Int'l Dictionary* (unabridged ed. 1993).  "Overflow" generally means "to flow over the top, brim, or banks of" or "to spread or cover over." *American Heritage Dictionary of the English Language* (4th ed. 2000).  However, plaintiffs do not present evidence or explain how an overflow of water from the McKenzie River temporarily spread over their land.  Rather, plaintiffs conclusively assert that "there was a complete inundation of more than two acres of normally dry land on Plaintiffs' property . . . from water flowing over these properties from an inland water

source, i.e. the McKenzie River." Plaintiffs' Memorandum in support of Motion for Summary Judgement, p. 5.

Plaintiffs rely on the expert affidavits of Broda and Charles Guile. Broda adopts the language of the SFIP and asserts that "there was a general and temporary condition of partial or complete inundation of two or more acres or normally dry land on two or more properties . . . from an overflow of the water of the McKenzie River . . . [that was] preceded by a collapse or subsidence of [plaintiffs'] land along the shore of the McKenzie River as a result of erosion or undermining caused by currents of water that exceeded anticipated cyclical levels." Affidavit of Karel Broda, p. 3. Guile states that by February 27, 2004, "2.2 acres of land owned by plaintiff [as of 1998] had been completely inundated by the water of the McKenzie River." Affidavit of Charles Guile, p. 2.[1]

However, the meaning of "flood" under the SFIP is not a subject on which Broda or Guile is qualified to render an opinion; it is a legal question for the court. "Although experts may

_____

[1]Plaintiffs also seek to supplement the record with documents pertaining to an inspection of plaintiffs' home conducted on February 3, 2004 by Thomas Valencia, an insurance adjuster for Colonial Claims Corporation who inspected the home at Farmers's request. Apparently, Valencia initially stated that a general condition of flooding existed and that the home would be a total loss. Valencia eventually changed his mind; in his final report he states that there was "no condition of general flooding at the insured premises on 1/30/2004." Defendant's Memorandum, Ex. 1, p. 8. Therefore, while I allow the supplementation, whether Valencia initially thought a flood occurred is irrelevant; Farmers subsequently denied the claim because it determined that no flood had occurred as defined by the SFIP.

disagree in their conclusions, their testimony cannot be used to provide legal meaning or interpret the [insurance] policies as written." McHugh, 164 F.3d at 454. Therefore, expert testimony is "only relevant for the historical facts that [the experts] observed and not for their legal conclusions as to what conditions were covered or excluded under the policy." Id. Here, neither Broda nor Guile explain how they interpret the term "inundation," describe how the land was "inundated," or provide historical facts to support their conclusions. Indeed, plaintiffs present no facts to suggest that the McKenzie River overflowed and spread over, or inundated, their land.

Given plaintiffs' allegations regarding the loss of the riverbank, Broda and Guile apparently conclude that the erosion, subsidence or collapse of plaintiffs' land along the riverbank constitutes an "inundation" of the land. When the court asked for clarification of how their land was "inundated" by waters of the McKenzie River, plaintiffs merely asserted that the land previously located next to the river is now gone. Thus, for plaintiffs' argument to prevail, the court must equate the "inundation" of land with its erosion, subsidence or collapse into the river. Plaintiffs' interpretation is contrary to the plain meaning of the word "inundate" and would render the second definition of "flood" redundant and superfluous.

Even if "inundate" could be construed to mean the erosion or subsidence of land, such "inundation" of plaintiffs' land was not temporary and did not result from an overflow of the McKenzie

River. Indeed, in a taped statement made prior to the filing of this case, Randy Mathews admitted that the McKenzie River did not overflow its banks on December 13 or 14. Rather, Mathews stated that the riverflow "removed the [revetment] that was protecting the land and it's been taking the dirt away ever since." Defendant's Memorandum, Ex. 13, p. 8 (transcript of tape-recorded statement of Randy Mathews).

Plaintiffs attempt to stretch the terms of the SFIP far beyond their usual and unambiguous meanings and argue that the water flowing "across" plaintiffs' property on the date of loss was "temporary" and that an "overflow" of the McKenzie River occurred, because the river now flows "far beyond the banks of the river that existed on or before December 13, 2003." Plaintiff's Reply Memorandum, p. 6. I find plaintiffs' argument irrelevant and non-sensical. The changing course and altered banks of the McKenzie River was not and is not an "overflow" of inland water resulting in a "temporary inundation" of land.

Under the undisputed facts of this case, plaintiffs' loss was not caused by a flood, because no evidence suggests that plaintiffs' land was generally and temporarily inundated by an overflow of water from the McKenzie River. Therefore, plaintiffs are not entitled to benefits under the SFIP.

CONCLUSION

It is not without sympathy that the court reaches the conclusion it must. However, plaintiffs fail to establish that they are excused from complying with the proof of loss requirement

or that their loss was caused by a flood.  Therefore, Farmers'
Motion for Summary Judgment (doc. 29) is GRANTED, and plaintiffs'
Motion for Summary Judgment (doc. 21) is DENIED.  Plaintiffs'
Motion to Supplement Record (doc. 52) is GRANTED, and Farmers'
Motions to Strike and to Quash Jury Demand (docs. 33, 40, 42) are
DENIED as moot.  Judgment shall issue in favor of Farmers.

IT IS SO ORDERED.

Dated this **27** day of June, 2005.

Ann Aiken
United States District Judge